IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

```
CEDRIC JAMES BELL,              )
                                )
     Plaintiff,                 )
                                )
v.                              )    CASE NO. CV416-097
                                )
DEPUTY WARDEN VICKIE BROWN      )
and C.O. DICKIE PENN,           )
                                )
     Defendants.                )
                                )
```

**O R D E R**

Before the Court is Defendants Vickie Brown and Dickie Penn's Motion for Summary Judgment. (Doc. 19.) For the following reasons, Defendants' motion is **GRANTED**. As a result, Plaintiff's claims are **DISMISSED**. The Clerk of Court is **DIRECTED** to close this case.

**BACKGROUND**

May 7, 2014 started as a routine, unseasonably warm spring morning at the Effingham County Correctional Institution.[1] As an inmate, Plaintiff Cedric James Bell was just finishing what to that point could only be considered

---

[1] Because Plaintiff is the non-moving party, the Court construes the evidence in the record and all reasonable factual inferences in Plaintiff's favor when ruling on Defendants' Motion for Summary Judgment. See Eberhardt v. Waters, 901 F.2d 1578, 1580 (11th Cir. 1990). However, the Court is not required to assume to truth or accuracy of mere speculation or conjecture. See Cordoba v. Dillard's, Inc., 419 F.3d 1169, 1181 (11th Cir. 2005).

an uneventful shift in the prison kitchen. (Doc. 19, Attach. 2 at 3.) All that changed when the peanut-butter bandit smoothly skipped out of the kitchen's storage room with a large jar of peanut butter. (Id. at 3.) In a jiff, the bandit managed to hide the jar among the pots and pans, eventually flying off with it to Dorm A. (Id. at 3-4.)

However, the caper was not completely successful. The kitchen manager notified prison staff after discovering that the pantry was short one jar of peanut butter. (Id. at 4.) Lacking any real leads as to the bandit's identity, correctional officers attempted to squeeze the thief by threatening to search every room in Dorm A unless the jar was returned. (Id.) The officers promised that this search would result in the discovery and confiscation of every inmate's contraband cellular phones, cigarettes, and marijuana. (Id.)

Upset at the notion of losing their illegal phones, cigarettes, and marijuana, the denizens of Dorm A threatened physical violence against the anonymous pilferer should he fail to return the purloined peanut butter. (Id. at 4.) This placed the bandit in a sticky situation. Seeking to maximize the return on his theft, the bandit had already traded what he had not eaten of the delicacy to another inmate for various other items procured from the

prison's food store, some of which the bandit had also consumed. (Id. at 5.)

Seeking to avoid this jam, the peanut-butter bandit told the Dorm A inmates that Plaintiff was the individual that informed prison officials that the filcher resided in Dorm A. (Doc. 19, Attach. 3 55:22-56:8.) The bandit, backed by his gang, confronted Plaintiff, accused him of snitching, and told him to "get out of the dorm because we're going to put you on the door." (Id. 58:2-4.) Standing his ground, Plaintiff retorted that "if you-all want some, come up here and get some." (Id. 58:14-15.) Once this situation deescalated, Plaintiff attempted to inform Defendant Brown, the Deputy Warden, as she walked by the Dorm A door. (Doc. 19, Attach. 2 at 5-6.) Defendant Brown was unable to hear Plaintiff through the glass door, but motioned that she was busy and would return to speak with him later in the day. (Id.)

Soon thereafter, Plaintiff was moved outside with other prisoners for supervised recreation. (Id. at 6.) Plaintiff claims that another inmate, whom Plaintiff is unable to identify, told him that Defendant Penn named Plaintiff as the inmate "who had reported [Dorm A inmates] for stealing the peanut butter." (Doc. 26 at 4.) Despite previously having been falsely identified by the bandit,

3

Plaintiff confronted Defendant Penn with the accusation that Defendant Penn had identified Plaintiff as the informant. (Id.) According to Plaintiff, Defendant Penn stated that he "ain't got nothing to do with none of that" and "[i]f you want to talk to somebody, you need to talk to them folk in the kitchen." (Doc. 19, Attach. 3 60:18-21.) Plaintiff "interpreted [Defendant] Penn's dubious denial as an admission." (Doc. 26 at 4.)

Upon returning to Dorm A, Plaintiff decided to nap in his bunk. (Doc. 19, Attach. 2 at 6.) While Plaintiff slept, he was attacked by approximately ten of his fellow inmates. (Id.) Prison officials did not witness the attack, but found Plaintiff semi-conscious, and suffering from head, shoulder, back, and arm injuries. (Id.)

Based on these events, Plaintiff filed a complaint in this Court against Defendants in their individual capacities based on an alleged violation of Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment. (Doc. 1.) Specifically, Plaintiff contends that Defendant Penn's labeling of Plaintiff as a snitch was deliberately indifferent to the substantial risk of harm because Defendant Penn knew that inmates were likely to physically harm Plaintiff in retaliation. (Id. ¶¶ 20-26.) The complaint argues that Defendant Brown is also liable

4

because she failed to protect Plaintiff from the known risk of harm after Plaintiff was labeled as an informant. (Id. ¶¶ 28-33.)

In their Motion for Summary Judgement, Defendants contend that they are protected by qualified immunity. (Doc. 19, Attach. 2 at 9-11.) Defendants also maintain that Plaintiff's claims fail because he is unable to establish that any of Defendants' actions violated the Eighth Amendment. (Id. at 16-19.) In response, Plaintiff concedes that he lacks any claim against Defendant Brown. (Doc. 26 at 8.) With respect to Defendant Penn, Plaintiff contends that he has identified sufficient evidence in the record to permit a reasonable jury to conclude that Defendant Penn was deliberately indifferent to the risk of harm he created by identifying Plaintiff as a snitch to other inmates. (Id. at 5-8.)

**ANALYSIS**

Summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The "purpose of summary judgment is

5

to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citing Fed. R. Civ. P. 56 advisory committee notes). Summary judgment is appropriate when the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The substantive law governing the action determines whether an element is essential. DeLong Equip. Co. v. Wash. Mills Abrasive Co., 887 F.2d 1499, 1505 (11th Cir. 1989).

As the Supreme Court explained:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.

Celotex, 477 U.S. at 323. The burden then shifts to the nonmovant to establish, by going beyond the pleadings, that there is a genuine issue as to facts material to the nonmovant's case. Clark v. Coats & Clark, Inc., 929 F.2d

604, 608 (11th Cir. 1991). The Court must review the evidence and all reasonable factual inferences arising from it in the light most favorable to the nonmovant. Matsushita, 475 U.S. at 587-88. However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Id. at 586. A mere "scintilla" of evidence, or simply conclusory allegations, will not suffice. See, e.g., Tidwell v. Carter Prods., 135 F.3d 1422, 1425 (11th Cir. 1998). Nevertheless, where a reasonable fact finder may "draw more than one inference from the facts, and that inference creates a genuine issue of material fact, then the Court should refuse to grant summary judgment." Barfield v. Brierton, 883 F.2d 923, 933-34 (11th Cir. 1989).

Government officials performing discretionary functions are entitled to qualified immunity from being sued in their individual capacities unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." Gonzalez v. Reno, 325 F.3d 1228, 1233 (11th Cir. 2003) (quoting Hope v. Pelzer, 536 U.S. 730, 739 (2002)). An official invoking the protection of qualified immunity must first establish that he was acting within his discretionary authority. Id. at 1234. Once established, the plaintiff

7

then bears the burden of showing that the defendant is not entitled to qualified immunity by proving that "(1) the defendants violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation." Caldwell v. Warden, FCI Talledega, 748 F.3d 1090, 1099 (11th Cir. 2014) (quoting Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1264 (11th Cir. 2004)).

In this case, Plaintiff does not dispute that Defendant Penn was a government official acting within the scope of his discretionary authority. Therefore, the pertinent question becomes whether Plaintiff has identified sufficient evidence in the record that would permit a reasonable jury to determine that Defendant Penn violated Plaintiff's constitutional rights. According to Plaintiff, Defendant Penn committed an Eighth Amendment constitutional violation by informing Plaintiff's fellow inmates that Plaintiff identified an inmate from Dorm A as the peanut-butter bandit.

The Eighth Amendment requires prison officials to "take reasonable measures to guarantee the safety of the inmates." Caldwell, 748 F.3d at 1099 (quoting Farmer v. Brennan, 511 U.S. 825, 832 (1994)). To avoid summary judgment, "a plaintiff must produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendants'

8

deliberate indifference to that risk; and (3) causation." Id. (quoting Goodman v. Kimbrough, 718 F.3d 1325, 1331 (11th Cir. 2013)). Whether a plaintiff faced a substantial risk of serious harm is evaluated using an objective standard. Id. A defendant's deliberate indifference contains both a subjective and objective component. Id. A plaintiff must establish both that the defendant subjectively knew that the plaintiff faced a substantial risk of serious harm, and that the defendant ignored that risk by failing to address it in an objectively reasonable manner. Id. (quoting Rodriguez v. Sec'y for Dep't of Corrs., 508 F.3d 611, 617 (11th Cir. 2007)). The Eleventh Circuit Court of Appeals has previously determined that a prison official violates the Eighth Amendment by labeling an inmate a snitch and exposing him to retaliation. See Harmon v. Berry, 728 F.2d 1407, 1409 (11th Cir. 1984).

In this case, however, Plaintiff's claim against Defendant Penn must fail because Plaintiff has not pointed to any evidence that Defendant Penn actually labeled him as a snitch or informant. In his deposition, Plaintiff initially states that it was the actual peanut-butter bandit who told Dorm A inmates that Plaintiff informed

Defendant Brown about the theft.[2] Later, Plaintiff allegedly confronts Defendant Penn after an unnamed inmate told Plaintiff that he heard from another unnamed inmate that Defendant Penn had identified Plaintiff as an informant with respect to the stolen peanut butter. (Doc. 19, Attach. 3 117:20-24, 119:3-8.) According to Plaintiff's version of events, Defendant Penn denied identifying Plaintiff as a snitch, stating only "I ain't got nothing to do with none of that. If you want to talk to somebody, you need to talk to them folk in the kitchen." (Id. 60:18-21.)

Plaintiff tries to support his claim with his own interpretation of Defendant Penn's response. In Plaintiff's view, Defendant "Penn's dubious denial [w]as an admission." (Doc. 26 at 4.) Plaintiff thinks it obvious that Defendant Penn "knew what I was talking about, but he just say, I ain't got nothing to do with none of that." (Doc. 19, Attach. 3 60:18-19.) In broad terms, Plaintiff's only evidence is just his allegation that someone told him that they heard from someone else that Defendant Penn informed

---

[2] See Doc. 19, Attach. 3 33:20-25 ("And then by me walking Miss Brown around the kitchen every morning, the guy that stole the peanut butter, the -- a little jar of peanut butter, figured because I was walking her around, that I had told her that he stole it."); id. 55:23-56:2 ("[The thief] said, that ni[****] that walks the warden around every morning had to tell who stole it because he knew I knew that he - that the stuff was under -- he said he had something under the pot.").

inmates that Plaintiff was the snitch, and that Plaintiff generally does not believe Defendant Penn's denial.

While this might be sufficient to survive a motion to dismiss, Plaintiff is required at this point to identify evidence in the record that would permit a reasonable jury to conclude that Defendant Penn committed a constitutional violation. Plaintiff's general belief that Defendant Penn labeled him as a snitch is woefully insufficient. Plaintiff has not identified a single inmate who heard Defendant Penn identify Plaintiff as the informant, instead stating that he heard it from an unknown inmate who heard it from some other unknown inmate. Moreover, Plaintiff's assessment regarding the veracity of Defendant Penn's statement is immaterial to whether Defendant Penn committed the alleged acts. Plaintiff's version of their exchange does not include any incriminating statement that would convince a reasonable jury that Defendant Penn told Plaintiff's fellow inmates that Plaintiff had informed prison officials as to the identity of the peanut-butter bandit.

At this stage in the proceedings, the Court must "pierce the pleadings and [] assess the proof in order to see whether there is a genuine need for trial." <u>Matsushita</u>, 475 U.S. at 587 (<u>citing</u> Fed. R. Civ. P. 56 advisory committee notes). Looking behind Plaintiff's general

11

statements, allegations, and impressions, the Court can discern no evidence that would establish Defendant Penn subjectively knew that Plaintiff faced a substantial risk of serious harm, and that Defendant Penn failed to address that risk an objectively reasonable manner. Caldwell, 748 F.3d at 1099 (quoting Rodriguez, 508 F.3d at 617). At best, Plaintiff offers only speculation and conjecture regarding his claim against Defendant Penn, which is insufficient to create a genuine issue of material fact. See Cordoba v. Dillard's, Inc., 419 F.3d 1169, 1181 (11th Cir. 2005). Accordingly, Defendant Penn is entitled to summary judgment.[3]

**CONCLUSION**

For the foregoing reasons, Defendants' Motion for Summary Judgment is **GRANTED**. As a result, Plaintiff's claims are **DISMISSED**. The Clerk of Court is **DIRECTED** to close this case.

SO ORDERED this 22ND day of February 2018.

_____
WILLIAM T. MOORE, JR.
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

---

[3] Because the Court concludes that Plaintiff has failed to establish the violation of a constitutional right, the Court need not consider whether that right was clearly established.