[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-11287
Non-Argument Calendar
_____

D.C. Docket No. 4:16-cv-00097-WTM-GRS


CEDRIC JAMES BELL,

                                             Plaintiff - Appellant,

versus

DEPUTY WARDEN VICKIE BROWN,
C.O. DICKIE PENN,

                                             Defendants - Appellees.

_____

Appeal from the United States District Court
for the Southern District of Georgia
_____

(September 19, 2018)

Before BRANCH, FAY, and DUBINA, Circuit Judges.

PER CURIAM:

Appellant/Plaintiff, Cedric Bell ("Bell"), appeals the district court's order granting summary judgment to Warden Vickie Brown[1] and Correctional Officer Dickie Penn ("Officer Penn") on his Eighth Amendment claim for alleged deliberate indifference to a substantial risk of harm. Bell filed his complaint after he was attacked by fellow inmates. The district court granted summary judgment to Officer Penn, finding that Bell had not demonstrated that Officer Penn subjectively knew that Bell faced a substantial risk of serious harm and that Officer Penn failed to address that risk in an objectively reasonable manner. Finding that Bell failed to establish a constitutional violation, the district court granted summary judgment to Officer Penn. After a review of the record and the parties' briefs, we affirm the district court's grant of summary judgment.

## I. BACKGROUND

In May 2014, Bell was an inmate at Effingham County Correctional Institution, serving a felony sentence. Bell worked in the kitchen during his incarceration cleaning dishes, preparing food, and serving the prepared food. Because of his kitchen duty, Bell was able to sneak food from the kitchen into his room, and this caused friction with his fellow inmates. Moreover, as Bell stated, his fellow inmates did not like him because he would beat them in checkers and

---

[1] Bell conceded in the district court that he had no claims against Warden Brown. Thus, as did the district court, we will consider only the claims alleged against Officer Penn.

chess, talking "to them while I beat them, like Ali did." (R. Doc. 19-3, Bell Dep. p. 39:5–10.)  Unlike his negative rapport with his fellow inmates, Bell had a good relationship with the staff and knew Warden Brown and Officer Penn.

The morning of the incident in question, Bell was at work in the kitchen when a new food service vendor employee opened the door to the kitchen's storage room.  A number of his fellow inmates rushed into the storage room and started taking unauthorized items.  An inmate unknown to Bell grabbed a large jar of peanut butter and placed it under one of the cooking pots and told the cooks not to use that particular pot.  The next day, the kitchen manager noticed that a five-pound jar of peanut butter was missing from the kitchen, and he reported the missing peanut butter to prison staff.  A correctional officer entered Dorm A and announced that a large jar of peanut butter was missing from the kitchen and whoever took the peanut butter should return it.  The officer informed the inmates that if the inmate who stole the peanut butter did not return it forthwith, the officers would conduct a shakedown of the dorm and confiscate all the inmates' contraband, such as cell phones, cigarettes, and drugs.

When the inmates heard that they might lose their contraband, they told all the others in the dorm that whoever took the peanut butter should return it or they would "beat the brains off of" anyone who stole the peanut butter and caused them

3

to lose their cell phones, cigarettes, and drugs.  (R. *Id.* at 54:15–21.)  According to

Bell, this created a conundrum for the peanut butter thief because:

> he had already traded the peanut butter from—for somebody else for
> some store items, and he had already ate some of the store items, so
> now he got to turn the peanut butter in plus he got to pay the guy for
> the store items that he already ate because he can't sell them the
> peanut butter anymore.

(R. *Id.* at 55:7–13.)

In order to resolve his predicament, the peanut butter thief announced to the Dorm

A inmates that Bell was the snitch who informed corrections officials that the thief

resided in Dorm A.  The thief and other inmates verbally threatened Bell, and Bell

told them to "come up here and get some."  (R. *Id.* at 58:12–15.)  There is no

record evidence that either Warden Brown or Officer Penn saw or heard this

altercation.

Bell attempted to inform Warden Brown of the situation, but was

unsuccessful.  Officers took Bell, and other prisoners, outside for recreation.  Bell

claims that another inmate, he cannot identify, told Bell that Officer Penn named

Bell as the snitch.  (R. *Id.* at 60:2–8.)  Bell confronted Officer Penn about this

information, and Officer Penn denied any involvement.  (R. *Id.* at 60:11–21 ("I

ain't got nothing to do with none of that."))  Bell returned to his dorm, and while

napping, approximately ten inmates attacked him.  Prison officials did not witness

the attack but found Bell semi-conscious and suffering from various injuries.

## II. STANDARD OF REVIEW

This court reviews de novo the district court's grant of summary judgment.

*Rioux v. City of Atlanta*, 520 F.3d 1269, 1274 (11th Cir. 2008).

## III. DISCUSSION

Bell contends that the district court erred in its determination that Officer

Penn was entitled to summary judgment because Bell did not establish that Officer

Penn violated a constitutional right under the Eighth Amendment.  The Eighth

Amendment places an obligation on prison officials to take reasonable measures to

guarantee the safety of the inmates.  *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S.

Ct. 1970, 1976 (1994).  To prove such a violation, Bell must "produce sufficient

evidence of (1) a substantial risk of serious harm; (2) the defendants' deliberate

indifference to that risk; and (3) causation."  *Caldwell v. Warden, FCI Talladega*,

748 F.3d 1090, 1099 (11th Cir. 2014) (quoting *Goodman v. Kimbrough*, 718 F.3d

1325, 1331 (11th Cir. 2013)).  The court utilizes an objective standard to determine

whether a plaintiff faced a substantial risk of serious harm.  *Id.*  A defendant's

deliberate indifference contains both a subjective and an objective component.  *Id.*

To succeed, a plaintiff must show that the defendant subjectively knew that the

5

plaintiff faced a substantial risk of serious harm, and that the defendant ignored

that risk by failing to address it in an objectively reasonable manner.  *Id.*  Our court

has held that a prison official violates the Eighth Amendment when he labels an

inmate a snitch and exposes him to retaliation.  *See Harmon v. Berry*, 728 F.2d

1407, 1409 (11th Cir. 1984).

Government officials performing discretionary functions are entitled to

qualified immunity from being sued in their individual capacity unless their

conduct "violates clearly established statutory or constitutional rights of which a

reasonable person would have known."  *Gonzalez v. Reno*, 325 F.3d 1228, 1233

(11th Cir. 2003) (internal quotation marks omitted).  The official invoking a

qualified immunity defense must first establish that he was acting within his

discretionary authority when the alleged constitutional violation occurred.  *Id.* at

1234.  Once that is established, the plaintiff bears the burden of showing that the

defendant is not entitled to qualified immunity by proving that "(1) the officer's

conduct violated a constitutional right," and "(2) the right was clearly established"

at the time of the alleged violation.  *Id.* (citing *Saucier v. Katz*, 533 U.S. 194, 201,

121 S. Ct. 2151, 2156 (2001)).

There is no dispute that Officer Penn was acting in his discretionary

authority at the time of the alleged constitutional violation.  However, Bell cannot

6

show that Officer Penn violated his Eighth Amendment right because Bell does not

support his claim with any evidence that Officer Penn actually labeled him as a

snitch.  In his own deposition, Bell states that the inmate thief was the one who

told the Dorm A inmates that Bell was the snitch.  (R. Doc. 19-3, 33:20–25.)  Bell

has not identified any inmate who heard Officer Penn label Bell as the snitch,

instead relying on his own assertions that Officer Penn told the other inmates that

Bell was the snitch.  Bell cannot rely on his own conclusory allegations and

conjecture to create a genuine issue of material fact.  *See Cordoba v. Dillard's,*

*Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005).  Bell fails to identify evidence in the

record that would permit a reasonable finder of fact to conclude that Officer Penn

subjectively knew that Bell faced a substantial risk of serious harm and that Officer

Penn failed to address that risk in an objectively reasonable manner.  *Caldwell*, 748

F.3d at 1099.  Accordingly, we conclude that the district court properly granted

summary judgment to Officer Penn, and we affirm the judgment.

    AFFIRMED.

**UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

September 19, 2018

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number:  18-11287-FF
Case Style:  Cedric Bell v. Vickie Brown, et al
District Court Docket No:  4:16-cv-00097-WTM-GRS

**This Court requires all counsel to file documents electronically using the Electronic Case Files ("ECF") system, unless exempted for good cause.** Enclosed is a copy of the court's decision filed today in this appeal. Judgment has this day been entered pursuant to FRAP 36. The court's mandate will issue at a later date in accordance with FRAP 41(b).

The time for filing a petition for rehearing is governed by 11th Cir. R. 40-3, and the time for filing a petition for rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise provided by FRAP 25(a) for inmate filings, a petition for rehearing or for rehearing en banc is timely only if received in the clerk's office within the time specified in the rules. Costs are governed by FRAP 39 and 11th Cir.R. 39-1. The timing, format, and content of a motion for attorney's fees and an objection thereto is governed by 11th Cir. R. 39-2 and 39-3.

Please note that a petition for rehearing en banc must include in the Certificate of Interested Persons a complete list of all persons and entities listed on all certificates previously filed by any party in the appeal. See 11th Cir. R. 26.1-1. In addition, a copy of the opinion sought to be reheard must be included in any petition for rehearing or petition for rehearing en banc. See 11th Cir. R. 35-5(k) and 40-1 .

Counsel appointed under the Criminal Justice Act (CJA) must submit a voucher claiming compensation for time spent on the appeal no later than 60 days after either issuance of mandate or filing with the U.S. Supreme Court of a petition for writ of certiorari (whichever is later) via the eVoucher system. Please contact the CJA Team at (404) 335-6167 or cja_evoucher@ca11.uscourts.gov for questions regarding CJA vouchers or the eVoucher system.

Pursuant to Fed.R.App.P. 39, costs taxed against the appellant.

Please use the most recent version of the Bill of Costs form available on the court's website at www.ca11.uscourts.gov.

For questions concerning the issuance of the decision of this court, please call the number referenced in the signature block below. For all other questions, please call Janet K. Mohler, FF at (404) 335-6178.

Sincerely,

DAVID J. SMITH, Clerk of Court

Reply to: Djuanna Clark
Phone #: 404-335-6161

OPIN-1A Issuance of Opinion With Costs